Good morning. My name is Andrew Kaufman. I represent the petitioner. I'd like to reserve two minutes, if I remember. The issue in this case is pretty simple. It's whether substantial evidence supports the BIA's, the Board of Immigration Appeals, negative credibility finding. The petitioner's argument is that neither the immigration judge nor the BIA conducted a very well-reasoned analysis. And basically, both decisions were very bad decisions and mischaracterized the petitioner's testimony. There were four reasons that the BIA relied on in the negative credibility finding. The first was the petitioner's demeanor during his hearing. And then there were three alleged areas where the petitioner's testimony was inconsistencies. Substantial evidence doesn't support any of those alleged inconsistencies. They were all based on mischaracterizations of the petitioner's testimony. And the petitioner would submit that he did not actually testify inconsistently during his hearing. And any claim that he did is just mischaracterizing his testimony. Well, I mean, you make the assertion, but explain to me why the IJ's findings about the inconsistency between what happened at Malapur and what happened at Ludhiana. You know, we may draw different conclusions. You might draw different conclusions. But what's your contention that these, that for example, that inconsistency wasn't a basis for a miscredibility finding? Your Honor, there simply was no inconsistency. The petitioner submitted a written declaration saying that he went to the Malapur police station on day one and issued a complaint against his neighbor. And then the next day he went to the Ludhiana police station and issued a similar complaint. The judge says that he testified inconsistently because he, because it was, her words, impossible that he could have gone to Ludhiana because he was arrested on that same day. But the petitioner said in his testimony, I went to Ludhiana to file the second complaint and I was arrested when I came home. So the IJ's I thought the, his, your client's testimony was that he didn't do anything between his complaint and his arrest. Your Honor, that's not very 187 of the record. That is not very clear. He said he didn't do anything for the rest of the day on the first day when he filed the complaint at Malapur. He said he went to Malapur, filed a complaint. The clerk there told him his complaint didn't matter and to go home, so brushed him off. And he said he went home. And then he spoke with some of his friends and they urged him to go to Ludhiana. And then he said the next day I went to Ludhiana and filed a complaint there. When he returned home, he was at the bus stop after returning home and he got arrested at the bus stop. So there was no inconsistency there. The IJ basically put words in the petitioner's mouth and the BIA just rubber stamped that on, in its decision. But the analysis was very shoddy by the IJ and the BIA. There was another alleged inconsistency whether the clerk at Malapur misbehaved or insulted the petitioner. Both the IJ and the BIA, they took the petitioner's language in his written declaration that he was insulted as an assertion that he was verbally insulted or that there was some kind of act similar to torture that was committed by the clerk. But that's not what his declaration says. It just says that he, that the clerk misbehaved. In his testimony in court, the petitioner said that he was brushed off and that he was frustrated by how the clerk treated him because the clerk, the petitioner testified repeatedly that the clerk told him his complaint didn't matter and told him to leave. And so I think in his testimony, he said that the clerk misbehaved. He was referring to the fact that the clerk didn't take his complaint seriously and didn't do his job as a police officer, didn't take the complaint. So that second inconsistency, whether the petitioner testified inconsistently about whether the clerk misbehaved or insulted him, I think that that is also not a real inconsistency. Regarding whether or not the petitioner's demeanor implicated his credibility, the IJ said that the petitioner broke down and cried when he described his father's death, but showed no emotion when he was describing being tortured. This was a speculation, a What's speculative about, isn't that just an observation as to how he, what his affect was during the testimony? I think the speculation, Your Honor, comes from assuming that the petitioner should respond similarly or should be similarly affected by recounting the death of his father and recounting being tortured. But I think those are two very different memories. And this court has held in cases like Wren v. Holder, which the petitioner cited in his brief, that victims of trauma, it's going to affect how you testify when you're in court, when you're recounting a really traumatic event. And the fact that he didn't break down crying when he described being tortured the way he broke down crying when describing the death of his father, that doesn't suggest that he's a dishonest person. And I think that it was wrong for the judge to find that he didn't testify credibly based on that. Another reason for rejecting the negative credibility finding based on the demeanor reason is that there's nothing in the transcript that can support that finding by the judge. There are a number of cases decided by this court that say that if the record of the proceedings, if the transcript doesn't obviously show some kind of evasiveness or inconsistencies by the petitioner, then no deference should be shown to a demeanor finding no matter how likely it is to be supported by nonverbal factors. That's a quote from the case of Jibril v. Gonzalez, which is cited by the petitioner in his opening brief. Is this a Real ID Act case, correct? Yes, Your Honor. So, we've got demeanor issues and then we have five factual inconsistencies that I know you disagree with, but any one of those could be sufficient, correct? I don't think so, Your Honor. I think that although it is a Real ID Act case, the reasons must be substantial. And if the reasons are trivial or if the reasons cited by the IJ or the BIA in fact don't exist, which the petitioner is arguing, then . . . But if, for example, the Malapur and when the timing and the bus stop and all that, that's a significant issue, isn't it? I don't think so, Your Honor, because I think that the petitioner offered a very plausible explanation of what happened. He went to Ludhiana, which is 12 miles away from Malapur, and he came back and he was arrested upon his return. The BIA . . . But the IJ was not required to accept the explanation that was given. The IJ did not even acknowledge the explanation. The IJ said that it was impossible, and it is not impossible to travel 12 miles away, file a complaint at one police station, and then come back and still be arrested at 8 o'clock in the morning. It's just not impossible. How could we go about second-guessing the credibility finding when we've never seen your client? I think that the arguments I'm making right now are the same arguments that the petitioner made in his brief. I think that the reasons that were cited by the IJ and the BIA were not supported by substantial evidence. If the transcript is read closely next to his declaration, it is very clear that he did not actually testify inconsistently regarding these issues. Did you want to reserve your remaining time? Yes, Your Honor. Thank you. Good morning, Your Honors. May I please the Court? My name is Juria Jones. I represent the Attorney General of the United States. As the Court has pointed out, this is a post-real I.D. Act case, and in that case, credibility determinations or findings of fact which are record evidence compels the contrary conclusion. Petitioner has not articulated why the record evidence compels a contrary conclusion. Particularly in the fact of this being a post-real I.D. case, the immigration judge is authorized to consider several relevant factors, the totality of the circumstances, such as demeanor, inconsistency between his written and oral statement, as well as internal inconsistencies. Petitioner is simply incorrect that there were no inconsistencies. Particularly, the first inconsistency was whether or not the police clerk misbehaved in his words. On page 707 of the record, in his declaration, he says that the police clerk misbehaved with me and that the police clerk insulted him. However, in his testimony on page 144, there is no mention of this incident at all on his direct examination. It was only after the immigration judge pointed to the fact that he admitted this information, and that's on page 184 and 185 of the record, he repeated, and I quote, nothing happened at the police station when he reported the further questioning by the immigration judge to make sure he understood that this was a fact that he had admitted. Then he stated, oh yeah, I was insulted. So that is a clear inconsistency between his written testimony, I mean, his testimony in court and his written declaration. There was also inconsistency with regards to the filing of the complaint in Ludiana, which I know I'm not saying correctly. On page 139 of the record, he stated that he was arrested at 8 a.m. On 144, again, all on direct examination, he said after speaking with the police at Mullapur, he returned home, and the next day, next morning, he was arrested. There was no mention in his direct testimony that he went to another precinct to report this. It was only on page 186 and 187 that there was any mention of this second complaint, and when asked by the immigration judge about this omission, he says, and I did not remember. That, again, it slipped my mind. That, again, is a clear inconsistent statement. There's also the inconsistency with regards to who was there when he was released from the police station. In his written statement on page 147, I'm sorry, on 707, he said that there were three individuals that were there. In his direct testimony on 147, again, three individuals. It was only on cross-examination that he mentioned that there were four members of his community plus the three individuals that were there at his release. This being a post-real ID, it doesn't matter that these don't go to the heart of his claim. It's any inaccuracy, any falsehood the immigration judge can consider with regards to making an adverse credibility finding. Let me ask you about the emotion issue. We have cases that talk about credibility and of course the IJ's province. We also have cases that say you really shouldn't speculate about how somebody should respond to a traumatic event. How do you navigate that kind of precedent in the face of what happened here? This court in Shretha v. Holder, I believe I'm saying that correctly, which is at 590 F3-1034, decided in 2010. This court discussed this. This court discussed all of these nonverbal communications, but that's why this court gives such high deference to this because this court cannot sit in the place of the immigration judge. It's not speculation to think that because his demeanor changed from one direction to the other. It was just an observation with regards to his nonverbal communication. Just as an observation is acceptable to this court, such as the coloration of an individual during a critical examination, whether or not he expresses some elaborated enormous nervousness, or what is the modulation or pace of his speech. All of those are factors that this court has recognized in Shretha. This finding by the immigration judge and a firm of the board is in line with those nonverbal communications that should be given deference as well. This situation is different because here the I.J. is saying, well, he cried in this circumstance and in the I.J.'s view, he necessarily should have cried when talking about the other circumstance. I don't see how that's a legitimate demeanor conclusion for someone to make. That necessarily is the I.J. looking into his or her head and concluding how somebody ought to act. The I.J. has no basis whatever of concluding, of understanding why someone cried in one circumstance and not another. You're correct, Your Honor. However, the other factors that I had mentioned that was noted in that case, such as the modulation of speech or coloration of skin, those are the factors too that would require an immigration judge to formulate an observation and then formulate an opinion based upon that observation. In this case, the observation was there was a form that he didn't express the same emotional response with regards to . . . Why was he obligated to? That depends on how he felt about the situation. You're right, Your Honor, but in this case, this court has said that there is the deference that's afforded because the immigration judge is there in person with the individual. Sure, obviously. But on top of that . . . A rape victim who came in and told her story with a stone face, would it be fair for the I.J. to say, I have some doubt about her credibility because she basically reported this like she was talking about some clinical observation and not what happened to her? If the immigration judge used some of the factors that this court has expressed in the totality of circumstances and reviewed all relevant factors of the case, if there are other determinative factors as well as weighing against the credibility of an individual, then absolutely, yes, that would be a factor. Again, this is a post-real ID case, and so demeanor is one of the first factors that's mentioned in the statute as being one of the determining and other factors as well. But we've got to decide exactly what a sensible definition of demeanor is. I mean, to follow up on Judge McKeon's hypothetical, suppose a rape victim was completely stoic, would the I.J. be . . . under your theory, the I.J. would be within her province in concluding that, well, she wasn't crying, she wasn't upset, she wasn't haltering in her discussion about it, the rape must not have been that traumatic for her. Your theory would endorse that approach to that hypothetical, wouldn't it? I would say not. I don't like the characterization of saying that's the theory. However, there would have to be other factors going into the credibility determination. It's not a So you're saying, then, that this kind of demeanor, judgment, standing alone, may not be worth much, but when you add it up with objective factors, then you can count it. I'm saying with regards to the totality of the circumstances and all the relevant factors, the agency did exactly what the statute requires them to do, is to look at all relevant factors and the totality of the circumstances and determine whether or not this individual provided credible testimony. And the agency is within their preview to be able to use these factors to determine whether or not this individual is being truthful and is providing credible testimony. Even if they may not necessarily make sense. Make sense in what regard, Your Honor? These sweeping conclusions based on whether the guy cried or not. I guess, going back to, I hope I'm not sounding like a broken record, but it's the fact that it matters that this was within the totality of the circumstances, and that demeanor had a direct bearing on whether or not he was being truthful, whether or not his testimony was credible. Why? And the standard Why the fact that he cried in situation one and not two? What does that have to do with his credibility, with truth telling? It's one of the relevant factors that have to be considered. For instance, the fact of the matter of someone's coloration during direct examination goes to their demeanor as well. So, Your Honor, you could ask us Would it matter here if we were to discount and say that, at least as explained, was an improper ground, when the BIA went on and said, furthermore, there's five reasons why that support lack of credibility? So, would it matter in this case? I'm almost out of time, but yes, it would not matter, actually, because of that fact is that there are other factors there, and looking at the totality of circumstances, the record evidence does not compel the conclusion contrary to what the agency reached. Even if there's one, if there's just one credibility determination that's valid, then the decision stands. That's correct, Your Honor. We don't have to dissect every single one. Right, that's correct, and we've provided you with several examples and record evidence to support that determination. Thank you. Thank you. Could you please give some rebuttal time, and why don't you put a minute and a half back on the clock? I wish I had another 10 minutes. This case is very fact-specific, and it requires a lot of digging into the transcript, but But doesn't that militate against your position? If it's fact-specific, then the deference is given to the fact-finder. Your Honor, I think that deference must be given if the fact-finder gives reasonable reasons, and in this case, the demeanor finding, like the Court has pointed out already, the one factor that the judge cited in terms of nonverbal communication was whether or not he cried. The counsel for the respondent cited other reasons that could be considered, like the modulation of speech or whether the person starts blushing, but the judge didn't cite those factors in her decision. So the judge did say there are other reasons. We have cases that have sanctioned the different reactions to different portions of testimony. Would you agree? We've upheld adverse credibility determinations based on demeanor evidence when a petitioner was talking about one event and was voluble and excited and then talking about a different event and the answers had to be pulled out of them. We have cases that have said that's a legitimate basis for an adverse credibility determination, right? I think there have been cases where demeanor was relied on and was approved of, but in this case, the particular demeanor finding that the I.J. made was not reasonable, and the I.J. said there were other reasons that I relied on, but the judge didn't list them. What's on the line, then, in terms of second-guessing a demeanor determination? Well, I think that the cases like the petitioner cited, Arulamplam v. Ashcroft and Gibralt v. Gonzalez, say that there should be some kind of indication in the record itself that the person was evasive, and in this case, all of the reasons that the judge cited, there were three alleged inconsistencies that the BIA cited, as I've said and as the petitioner argued in his brief, those reasons were not supported by substantial evidence. Those reasons were not, in fact, inconsistent. And so, if it's just the question alone whether or not the petitioner cried, that's not sufficient because the I.J. knew that that wasn't sufficient, that's why the I.J. really stretched to find other inconsistencies, but the inconsistencies that were cited were just based on mischaracterizations of the petitioner's testimony. Thank you. Thank you. Thank you both for your argument this morning. The case of Singh v. Lynch is submitted. We'll now take a brief break and we'll return at 10.30 for the last case on the calendar, which is Madoff v. Celaya.
judges: Parker, McKeown, Rawlinson